UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM E. HAIK, M.D., and
DRG REVIEW, INC., a Florida
corporation,

    Plaintiffs,

vs.                                     CASE NO. 3:98cv434/RV/SMN

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation, et al.,

    Defendants.

---

## NOTICE OF FILING ORIGINAL AFFIDAVIT OF
## DR. ROBIN CANTOR

Defendants file herewith the original affidavit of Dr. Robin Cantor. A facsimile copy of Dr. Cantor's affidavit was attached to Defendants' motion to permit supplementation of their expert designation.

_____
John F. Morkan III MD Bar No. 03945
S. Craig Holden, DC Bar No. 334573
OBER KALER GRIMES & SHRIVER, P.A.
120 East Baltimore Street
Baltimore, MD 21202-1643
(410) 685-1120
(410) 547-0699 (fax)

2000 APR -3 PM 2: 10

FILED

William W. Deem, Fla. Bar No. 512834
McGUIRE WOODS BATTLE & BOOTHE, LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 (fax)

and

Frank C. Bozeman, Jr., Esq.
BOZEMAN, JENKINS & MATTHEWS, P.A.
SunTrust Tower, Suite 801
220 West Garden Street
Pensacola, FL 32501
(850) 434-6223
(850) 4343-5242 (fax)

ATTORNEYS FOR COLUMBIA/HCA
HEALTHCARE CORPORATION, and
HEALTHTRUST INC. -- THE HOSPITAL
COMPANY

**Certificate of Service**

I certify that a copy of the foregoing has been furnished by U.S. Mail, this 30 day of March, 2000, to Arthur H. Lester, Esq., 813 Wagon Wheel Road, Ft. Walton Beach, FL 32547-7304; and Shelby R. Grubbs, Esq., 1000 Volunteer Building, 832 Georgia Avenue, Chattanooga, TN 37402-2207.

_____
Attorney

\\JAC\2615\Columbia HCA\Plead\NOF Cantor Aff.doc

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM E. HAIK, M.D., and
DRG REVIEW, INC., a Florida
corporation,

      Plaintiffs,

vs.                                        CASE NO. 3:98cv434/RV/SMN

COLUMBIA/HCA HEALTHCARE
CORPORATION, a Delaware
corporation, and HEALTHTRUST,
INC. -- THE HOSPITAL COMPANY,
a Delaware corporation,

      Defendants.

_____

**Affidavit of Dr. Robin Cantor**

IN THE DISTRICT OF COLUMBIA

      Before me, the undersigned authority duly authorized to administer oaths in the jurisdiction set forth above, personally appeared Dr. Robin Cantor, who is [ ] personally known to me or [✓] who presented _Va Drivers License_ as identification, and who being first duly sworn deposes and states as follows:

      1.      My name is Robin Cantor. I am more than eighteen years of age and make this affidavit of my own volition. I have personal knowledge of the matters set forth herein unless specifically indicated to the contrary.

## QUALIFICATIONS

1. I am a Principal and Managing Director in the Washington DC office of LECG, a unit of Navigant Consulting, Inc. I received a Ph.D. in economics from Duke University in 1985. Prior to joining LECG in September, 1996, I was Director of the Decision, Risk, and Management Science Program, a research program of the National Science Foundation. From 1982 to 1991, I was a senior researcher at Oak Ridge National Laboratory. I currently have a faculty appointment in the Graduate Part-Time Program in Environmental Engineering and Science of the Johns Hopkins University.

2. My 18 years of research and consulting expertise includes several areas of quantitative economic analysis, risk analysis and statistics. I have conducted numerous economic studies using the methods of regression analysis to examine economic values, power plant costs, insurance claims, and consumer and industrial product prices in the context of anti-trust litigation.

3. I am a past Councilor of the Society for Risk Analysis, past Chair of the Grants Management Committee and member of the Annual Meeting's Program Committee for 1996 and 1997. I am a past President of the board of directors for MATRIX, The Business Center for Women and Minorities. I serve or have served on science review and advisory boards for the Harvard Center for Risk Analysis, the Johns Hopkins University Graduate Part-Time Program in Environmental Engineering and Science, the National Center for Environmental Decision-making Research, the Carnegie Council on Ethics and International Affairs, the National Oceanic and Atmospheric Administration, the National Academy of Public Administration, and the Consortium

for International Earth Science Information Network. I currently serve on the editorial boards of the *Journal of Risk Analysis* and the *Journal of Risk Research*.

4. Exhibit 1 is a copy of my *c.v.* which contains a list of my publications and my testimony in the last four years. My current billing rate for this case is $275/hour.

5. LECG was retained by the law firm of Ober, Kaler, Grimes & Shriver and Columbia/HCA Healthcare Corp. ("Columbia") to evaluate and comment on the *Report to Shelby R. Grubbs*, by John Wheeler ("Wheeler Report") related to Columbia's alleged misuse of *The Optimizer/HTI Coder Education Manual* ("Manual") in certain of its hospitals and the issues addressed therein. Our team included Robert Yerman and myself as well as others. Specifically, I have been asked to examine whether the econometric analyses used by Dr. Wheeler comply with sound econometric modeling and statistical practices, and whether his conclusions can be relied upon by the Court to determine whether Columbia gained any value from the alleged copyright infringement. For purposes of my analysis, I assumed that Columbia has infringed Dr. Haik's copyright and allowed copyrighted material to be distributed and used by certain Columbia hospitals.

6. Based upon my review of Dr. Wheeler's deposition and reports, I find that there are serious and fatal errors in the econometric models he employs to measure damages from the alleged infringement. These errors render any conclusions drawn from the models completely unreliable and therefore, these results cannot be used as a basis for determining value in this case.

7. The full extent of the errors in Dr. Wheeler's analysis did not become apparent until I received and reviewed Dr. Wheeler's deposition, in which he provides a definition of the Manual variable and clarification of his weighting procedures.[1] In fact, because Dr. Wheeler provided no clear definition of the Manual variable or other regression variables in the Wheeler Report, the exact nature of his model mis-specification was not readily apparent or verifiable prior to his deposition testimony.

8. Dr. Wheeler's deposition testimony reveals that his econometric modeling violates basic statistical practices. As he has described it, his model contains a structurally invalid benchmark against which to measure any Manual effect. As he has specified the model, the benchmark group, or control group,[2] cannot be HTI hospitals without the manual (Wheeler Depo. at 165), as Dr. Wheeler's dataset contains no records for HTI hospitals without the manual. Nor can the benchmark be NHTI hospitals in 1992 to 1996 (Wheeler Depo. at 195) because that would fail to separately control for the influence of HTI Hospitals, 1992 through 1997, on the Manual effect. Dr. Wheeler has failed to control correctly for the different hospital groups that comprise his dataset. Consequently, his model cannot isolate any purported effect that the Manual may have had on NHTI hospitals in 1997.

9. Moreover, based upon Dr. Wheeler's clarification in his deposition, it is now apparent that his weighting procedure is also incorrect, unfounded, not based upon sound professional practice, and further exacerbates his specification errors discussed in the

---

[1] Dr. Wheeler defines his Manual variable to measure the manual's influence on CMIs as operative (i.e., equal to one) if the hospital is NHTI and the year is 1997 or if the hospital is HTI in any year from 1992 to 1997; Wheeler Depo., at 167-8.

[2] A benchmark or control group is the base case against which any purported incremental effect is measured.

previous paragraph. Details on his weighting approach and his technical justifications for weighting were not revealed until his deposition.

10. In his deposition, Dr. Wheeler suggests two technical justifications for his weighting approach. First, he claims the data are characterized by a technical problem known as "heteroskedasticity" (Wheeler Depo., at 180); however, he never tested this claim.[3] I have tested the claim and find that Dr. Wheeler's weighting technique does not correct for heteroskedasticity.

11. The second justification claimed by Dr. Wheeler for his weighting approach is a concern about treating each discharge equally in the estimation (Wheeler Depo., at 179).[4] This reasoning is invalid in this case, however, because it presumes a model based on averaged data (sometimes termed "grouped data"), not a model based on constructed indices such as CMIs.

12. Based upon his deposition testimony, I find that Dr. Wheeler did not apply his weights in accordance with standard statistical practice.[5] Dr. Wheeler's weighting approach biases the effects of the variables included in his regression and causes them to reflect the relationship between discharges (his weighting variable) and CMI levels. Since he

---

[3] While stating that "the multivariate analyses were checked for autoregressive error and the presence of influential outlier observations" (two possible additional technical problems), at no time prior to his deposition did Dr. Wheeler suggest the possibility of, or the need to correct for, heteroskedasticity.

[4] Notably, Dr. Wheeler's weighting approach does not accomplish his stated objectives even if the equal treatment was his only basis for weighting. He claims to perform the weighting to give equal weight to each discharge (Wheeler Depo., at 179), but he weights each of the 18 regressions by the total annual discharges across all 18 root DRGs rather than using the root DRG-specific discharges applicable to the individual regressions. In doing so, Dr. Wheeler is using an aggregate weight, not a weight specific to the discharges in particular root DRGs.

[5] Weights should be applied to all of the original variables in the model, including the constant term (see, e.g., Kmenta, Jan, Elements of Econometrics, 2nd Edition, 1986, at 283; 371). Dr. Wheeler did not apply the weights to his constant term (Wheeler Depo., at 183).

Page -5-

has no separate control for the discharge/CMI relationship in his regression, he cannot know which influence, the Manual or the discharge level, has affected CMIs.

13. My analysis of the data shows that when Manual is defined to isolate a change in CMIs for NHTI hospitals in 1997, and weighting is applied correctly or when an unweighted model is estimated, there is no separate positive and statistically significant effect of the Manual on the CMIs for any of the 18 root DRGs.[6]

14. The precise cumulative impact of Dr. Wheeler's numerous errors cannot be determined at this time since I have still not been able to replicate his results, even with the benefit of his deposition testimony and written reports. Nonetheless, my analysis shows that when Dr. Wheeler's conceptual and statistical errors are corrected, he provides to the Court no basis for finding that the manual increased CMIs for the NHTI hospitals in 1997.

15. Should a judge or jury accept Dr. Wheeler's analysis (particularly as amplified in his deposition) without clarification on the subject areas outlined above, they will likely be misled about the purported value of the alleged infringement. I am prepared to offer such clarification on short notice.

_____
Robin A. Cantor, PhD
Date: 3/29/00

_____
Notary Public
My Commission Expires: 12/14/03

---

[6] Yerman February 17, 2000 Report, at 9.